IN THE UNITED STATES DISTRICT COURT
for the WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

---

| | |
|---|---|
| Rachele Paris, | |
| *On behalf of herself and those similarly situated*, | Case No.   7:24cv00012 |
| Plaintiff, | Judge |
| v. | |
| New River Valley Pizza, LLC and Kevin Shaw, | Jury Demand Endorsed Hereon |
| Defendants. | |

---

## CLASS AND COLLECTIVE ACTION COMPLAINT

---

1.    Plaintiff Rachele Paris on behalf of herself and all similarly-situated individuals, brings this action against the New River Valley Pizza Domino's Pizza franchise stores. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on New River Valley Pizza Domino's Pizza franchise stores' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Virginia Minimum Wage Act ("VMWA"), the Virginia Wage Payment Act ("VWPA"), and for unjust enrichment under the laws of Virginia.

2.    Defendant Kevin Shaw is the founder and CEO of a Domino's Pizza franchise that operates Domino's Pizza stores ("the New River Valley Pizza Domino's franchise stores").

3.    Defendant New River Valley Pizza, LLC is an entity that owns and/or operates the New River Valley Pizza Domino's franchise stores.

4.    Defendants make up all or part of the organized group that operates the New River Valley Pizza Domino's franchise stores and are responsible for the actions of the New River Valley Pizza Domino's franchise stores.

5.    Upon information and belief, the New River Valley Pizza Domino's franchise stores own and operate at least seventeen Domino's Pizza restaurants in Southwest Virginia and surrounding areas.

6.    The New River Valley Pizza Domino's franchise stores have repeatedly and willfully violated the Fair Labor Standards Act and Virginia law, and have unjustly enriched themselves, by failing to adequately reimburse delivery drivers for their delivery-related expenses.

7.    Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA and Virginia law.

8.     All delivery drivers at the New River Valley Pizza Domino's franchise stores, including Plaintiff, have been subject to similar employment policies and practices, including policies and practices with respect to wages and reimbursement for expenses.

9.    Plaintiff brings this action on behalf of themselves and similarly situated current and former delivery drivers nationwide who elect to opt in pursuant to the FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA by Defendants.

10.    Plaintiff also brings this action on behalf of herself and current and former delivery drivers in Virginia, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of and the VMWA and VPWA.

11.    Plaintiff also brings this action on behalf of herself and current and former delivery drivers in Virginia, pursuant to Federal Rule of Civil Procedure 23, for unjust enrichment.

## Jurisdiction and Venue

12.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

13.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff Paris worked in this district, Defendants do business in this district, and a substantial part of the events giving rise to the claims herein occurred in this district.

## Parties

### Plaintiff

### Rachele Paris

14.     Plaintiff Paris is a resident of Roanoke, Virginia.

15.     Plaintiff Paris is an "employee" of the New River Valley Pizza Domino's franchise, including Defendants, as defined in the FLSA and Virginia law.

16.     Plaintiff Paris has given written consent to join this action.

### Defendants

17.     Plaintiff seeks to hold liable any individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons who acts or has acted directly or indirectly in the interest of the New River Valley Pizza Domino's franchise stores in relation to Plaintiff and similarly situated delivery drivers.

18.     Defendants New River Valley Pizza, LLC and Kevin Shaw make up all or part of the organized group of persons who acts or has acted directly or indirectly in the interest of the New River Valley Pizza Domino's franchise stores in relation to Plaintiff and similarly situated delivery drivers.

**New River Valley Pizza, LLC**

19.     Defendant New River Valley Pizza, LLC is a limited liability company, formed in Virginia, with its principal place of business at 1655 Roanoke St., Suite. C, Christiansburg, VA, 24073–2413.

20.     Upon information and belief, New River Valley Pizza, LLC has owned and operated Domino's Pizza stores throughout the relevant time period.

21.     New River Valley Pizza, LLC is owned and operated by Kevin Shaw.

22.     New River Valley Pizza, LLC is the entity, or one of the entities, that has entered into a franchise agreement with Domino's to operate the New River Valley Pizza Domino's franchise stores.

23.     New River Valley Pizza, LLC is the entity that appears on Plaintiff's and similarly situated employees' paystubs for work they complete/completed for the New River Valley Pizza Domino's franchise stores.

24.     New River Valley Pizza, LLC may command where, when and how much labor is performed by the delivery drivers at the New River Valley Pizza Domino's franchise stores.

25.     New River Valley Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

26.     Upon information and belief, New River Valley Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

27.     New River Valley Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

28.     At all relevant times, New River Valley Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

29.     New River Valley Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

30.     New River Valley Pizza, LLC is part of the organized group of individuals and entities that act directly or indirectly on behalf of the New River Valley Pizza Domino's franchise stores in relation to Plaintiff and Plaintiff's similarly situated co-workers.

31.     At all relevant times, New River Valley Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

32.     New River Valley Pizza, LLC's gross revenue exceeds $500,000 per year.

**Kevin Shaw**

33.     Kevin Shaw is a founder and CEO of the New River Valley Pizza Domino's franchise.

34.     Kevin Shaw is a person who has entered into a franchise agreement with Domino's to operate the New River Valley Pizza Domino's franchise stores.

35.     Kevin Shaw may command where, when, and how much labor is performed by the delivery drivers at the New River Valley Pizza Domino's franchise stores.

36.    Kevin Shaw is individually liable to the New River Valley Pizza Domino's franchise stores' delivery drivers under the definitions of "employer" set forth in the FLSA because he owns and operates the New River Valley Pizza Domino's franchise stores, serves as a manager of New River Valley Pizza, LLC, ultimately controls significant aspects of the New River Valley Pizza Domino's franchise stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

37.    At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had financial control over the operations at each of the New River Valley Pizza Domino's franchise stores.

38.    At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has a role in significant aspects of the New River Valley Pizza Domino's franchise stores' day to day operations.

39.    At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had control over the New River Valley Pizza Domino's franchise stores' pay policies.

40.    At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had power over personnel and payroll decisions at the New River Valley Pizza Domino's franchise stores, including but not limited to influence of delivery driver pay.

41.    At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to hire, fire and discipline employees, including delivery drivers at New River Valley Pizza Domino's franchise stores.

42.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to stop any illegal pay practices that harmed delivery drivers at the New River Valley Pizza Domino's franchise stores.

43.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to transfer the assets and liabilities of the New River Valley Pizza Domino's franchise stores.

44.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to declare bankruptcy on behalf of the New River Valley Pizza Domino's franchise stores.

45.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to enter into contracts on behalf of each of the New River Valley Pizza Domino's franchise stores.

46.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw has had the power to close, shut down, and/or sell each of the New River Valley Pizza Domino's franchise stores.

47.     At all relevant times, by virtue of his role as founder and CEO of the New River Valley Pizza Domino's franchise stores, Kevin Shaw had authority over the overall direction of each of New River Valley Pizza Domino's franchise stores and is ultimately responsible for their operations.

48.     The New River Valley Pizza Domino's franchise stores function for Kevin Shaw's profit.

49.    Kevin Shaw has influence over how the New River Valley Pizza Domino's franchise stores can run more profitably and efficiently.

50.    Kevin Shaw is part of the organized group of individuals and entities that act directly or indirectly on behalf of the New River Valley Pizza Domino's franchise stores in relation to Plaintiff and Plaintiff's similarly situated co-workers.

**Potential Additional Defendants**

51.    Upon information and belief, there are other individuals, entities, and/or limited liability companies that make up part of the New River Valley Pizza Domino's franchise stores, and therefore qualify as "employers" because they are part of the organized group of individuals and entities that act directly or indirectly on behalf of the New River Valley Pizza Domino's franchise stores in relation to Plaintiff and Plaintiff's similarly situated co-workers.

52.    Upon information and belief, Kevin Shaw owns and/or operates, in whole or in part, a number of these entities that make up part of the Defendants' Domino's Pizza franchise operation.

53.    Upon information and belief other entities owned or operated in whole or in part by Kevin Shaw may be liable for the claims asserted here.

54.    Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at New River Valley Pizza Domino's franchise stores.

55.    Allison Shaw is Vice President of the New River Valley Pizza Domino's franchise stores and may qualify as an "employer" as the term is defined by the FLSA for her role in New River Valley Pizza Domino's franchise stores.

56.     Upon information and belief, Kevin Shaw has entered into co-owner relationships with a number of his executives and/or business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the New River Valley Pizza Domino's franchise stores as that term is defined by the FLSA and Virginia wage and hour laws.

57.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

## CLASSWIDE FACTUAL ALLEGATIONS

58.     During all relevant times, the New River Valley Pizza Domino's franchise stores have operated Domino's Pizza stores.

59.     The primary function of the New River Valley Pizza Domino's franchise stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

60.     New River Valley Pizza Domino's franchise stores employ delivery drivers.

61.     Plaintiff and the similarly situated persons that Plaintiff seeks to represent are current and former delivery drivers employed at the New River Valley Pizza Domino's franchise stores.

62.     Plaintiff alleges that she and her fellow delivery drivers were denied minimum wages and denied all wages due to them during the hours they worked on the road making deliveries.

63.    All delivery drivers employed at the New River Valley Pizza Domino's franchise stores during the relevant time period have had essentially the same job duties — deliver pizza and other food items to customers.

64.    Delivery drivers at the New River Valley Pizza Domino's franchise stores work "dual jobs."

65.    Delivery drivers' inside job duties are not completed simultaneously with their tipped job duties.

66.    Delivery drivers' inside job duties are not related to their tipped job duties.

67.    At all relevant times, Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they work while completing deliveries.

68.    The New River Valley Pizza Domino's franchise stores require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza and other food items.

69.    The New River Valley Pizza Domino's franchise stores required delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, storage costs, financing charges, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

70.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase and/or maintain vehicles, gasoline, vehicle parts and fluids, automobile repair and maintenance services, insurance, suffered automobile depreciation and damage, financing charges,

and other vehicle-related expenses for the benefit of the New River Valley Pizza Domino's franchise stores.

71.    The New River Valley Pizza Domino's franchise stores reimbursed delivery drivers' automobile expenses based on a per-delivery rate or a per-mile rate.

72.    The New River Valley Pizza Domino's franchise stores do not track or record the delivery drivers' actual automobile expenses.

73.    The New River Valley Pizza Domino's franchise stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

74.    The New River Valley Pizza Domino's franchise stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers work for the New River Valley Pizza Domino's franchise stores.

75.    The New River Valley Pizza Domino's franchise stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers work for the New River Valley Pizza Domino's franchise stores.

76.    The New River Valley Pizza Domino's franchise stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

77.    The New River Valley Pizza Domino's franchise stores do not collect receipts of delivery drivers' automobile registration costs.

78.    The New River Valley Pizza Domino's franchise stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

79.    The New River Valley Pizza Domino's franchise stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at New River Valley Pizza Domino's franchise stores.

80.    The New River Valley Pizza Domino's franchise stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

81.    The New River Valley Pizza Domino's franchise stores do not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

82.    The New River Valley Pizza Domino's franchise stores do not reimburse their delivery drivers' automobile expenses at the IRS standard business mileage rate.

83.    The New River Valley Pizza Domino's franchise stores do not reimburse a reasonably approximate amount of delivery drivers' automobile expenses.

84.    The New River Valley Pizza Domino's franchise stores reimburse delivery drivers at a per-mile reimbursement rate for each mile driven that is less than IRS standard business mileage rate.

85.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods has been:

      a.    2019: 58 cents/mile
      b.    2020: 57.5 cents/mile
      c.    2021: 56 cents/mile
      d.    2022 (1/1-6/30): 58.5 cents/mile
      e.    2022 (7/1-12/31): 62.5 cents/mile
      f.    2023: 65.5 cents/mile
      g.    2024: 67 cents/mile

86.     The delivery drivers at the New River Valley Pizza Domino's franchise stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate.

87.     Driving a vehicle for purposes of pizza delivery results in increased costs to the delivery drivers because it involves more starting and stopping, turning on/off the car, and general wear-and-tear from having pizza and other equipment in or on the car.

88.     The New River Valley Pizza Domino's franchise stores inform delivery drivers that they are being reimbursed for their vehicle expenses, but the delivery drivers are not fully reimbursed for their vehicle expenses.

89.     The delivery drivers at New River Valley Pizza Domino's franchise stores advanced a business expense, interest free, to Defendants when they provided cars to use at work.

90.     Defendants benefited from the delivery drivers spending time off the clock repairing, servicing and maintaining their vehicles.

91.     Defendants benefited from the delivery drivers storing their vehicles when they are not being used to complete deliveries for Defendants.

92.     Defendants benefited from delivery drivers taking on the risk of using their vehicles to drive for Defendants' business.

93.     But for the delivery drivers using their own cars to make deliveries for Defendants' business, Defendants would have had to expend substantially more money and take on substantially more risk to operate their business.

94.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they are deprived of minimum wages guaranteed to them by the FLSA.

95.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the New River Valley Pizza Domino's franchise stores.

96.     All of the New River Valley Pizza Domino's franchise stores' delivery drivers had similar experiences to that of Plaintiff. They completed similar job duties, are subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and are paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

97.     Regardless of the precise amount of the reimbursements paid at any given point in time, the New River Valley Pizza Domino's franchise stores' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

98.     Because the New River Valley Pizza Domino's franchise stores paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to the New River Valley Pizza Domino's franchise stores an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

99.     The New River Valley Pizza Domino's franchise stores have failed to properly take a tip credit from Plaintiff's wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, the New River Valley Pizza Domino's franchise stores

have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

100.    The New River Valley Pizza Domino's franchise stores have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R. § 531.59.

101.    The New River Valley Pizza Domino's franchise stores have willfully failed to pay federal and Virginia state minimum wage to Plaintiff and similarly situated delivery drivers at the New River Valley Pizza Domino's franchise stores, have taken unauthorized deductions from the delivery drivers' wages and have failed to pay the delivery drivers all wages due.

102.    The New River Valley Pizza Domino's franchise stores' policy of under-reimbursement unjustly enriched them at the expense of their delivery drivers. Under-reimbursing delivery drivers allows Defendants to shift business expenses onto their employees, which confers various benefits on Defendants beyond and in excess of the direct savings from violating wage laws.

103.    All of the New River Valley Pizza Domino's franchise stores' delivery drivers conferred a benefit on Defendants by providing their own vehicles to deliver pizza and other food items for Defendants.

104.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

**Rachele Paris**

105.    Plaintiff Paris has worked for Defendants as a pizza delivery driver at the New River Valley Pizza Domino's franchise stores since February 2021.

106.    Plaintiff Paris delivers pizza and other food items to Defendants' customers' homes and businesses.

107.    When she is not making deliveries, Plaintiff Paris worked inside the restaurant, completing tasks such as taking orders, prepping food, counting inventory, doing dishes, cashing customers out, and/or doing other tasks necessary for the operation of the restaurant.

108.    Plaintiff Paris's inside job duties are not completed at the same time as her on-the-road job duties.

109.    Plaintiff Paris's inside job duties are not related to her tipped job duties.

110.    Plaintiff Paris is required to use her own car to deliver pizzas.

111.    Plaintiff Paris makes $5.25 per hour for the hours she worked on the road making deliveries.

112.    Plaintiff Paris is reimbursed per-mile while completing deliveries for Defendants.

113.    Plaintiff Paris is reimbursed 42 cents per mile.

114.    Plaintiff Paris is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

115.    Plaintiff Paris is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and

parts, insurance, storage costs, automobile financing, and other vehicle-related expenses for the benefit of Defendants.

116.    Plaintiff Paris purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, storage costs, and other vehicle-related expenses for the benefit of Defendants.

117.    New River Valley Pizza Domino's franchise stores do not track the actual expenses incurred by Plaintiff Paris.

118.    New River Valley Pizza Domino's franchise stores do not ask Plaintiff Paris to provide receipts of the expenses she incurred while delivering pizzas and other food items for Defendants.

119.    New River Valley Pizza Domino's franchise stores do not collect receipts from Plaintiff Paris related to the expenses she incurred while completing deliveries.

120.    New River Valley Pizza Domino's franchise stores do not collect receipts of Plaintiff Paris's gasoline purchases during weeks when she worked for Defendants.

121.    New River Valley Pizza Domino's franchise stores do not collect receipts of Plaintiff Paris's automobile maintenance, repair, and parts purchased or paid for during weeks when she worked for Defendants.

122.    New River Valley Pizza Domino's franchise stores do not collect receipts of Plaintiff Paris's monthly or annual automobile insurance costs.

123.    New River Valley Pizza Domino's franchise stores do not collect receipts of Plaintiff Paris's automobile registration costs.

124.    New River Valley Pizza Domino's franchise stores do not collect receipts of Plaintiff Paris's automobile financing or purchase costs.

125.    New River Valley Pizza Domino's franchise stores do not collect any other receipts from Plaintiff Paris related to the automobile expenses she incurred as a delivery driver at New River Valley Pizza Domino's franchise stores.

126.    New River Valley Pizza Domino's franchise stores do not reimburse Plaintiff Paris based on her actual delivery-related expenses.

127.    Plaintiff Paris is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

128.    During all relevant times, the New River Valley Pizza Domino's franchise stores have failed to adequately reimburse Plaintiff Paris for automobile and other job-related expenses.

129.    Plaintiff Paris regularly makes approximately 3-5 deliveries per hour during the hours she worked as a delivery driver.

130.    Plaintiff Paris regularly drives approximately 7.5 miles round trip per delivery.

131.    In 2023, for example, the IRS business mileage reimbursement is $.655 per mile. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.    Plaintiff    estimates    that Defendants under-reimbursed her by $.235 per mile ($.655-$.42=$.235), $1.76 per delivery ($.235 × 7.5 miles per delivery), and $7.05 per hour ($1.76 × 4 deliveries per hour).

132.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Paris minimum wage as required by law.

133.    Defendants have been unjustly enriched by Plaintiff Paris in that she uses her own vehicle and incurred vehicle-related expenses for Defendants' benefit.

## Collective Action Allegations

134.    Plaintiff brings the First Count on behalf of herself, and all similarly situated current and former delivery drivers employed at the New River Valley Pizza Domino's franchise stores during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

135.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decisions, policies, plans, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

136.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

137.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

138.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

139.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

140.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

141.    Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on

behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants'
> Papa John's stores in the State of Virginia between the date two years prior to the
> filing of the original complaint and the date of final judgment in this matter
> ("Virginia Minimum Wage Class").

142.    Plaintiff brings the Third and Fourth Counts under Federal Rule of Civil Procedure

23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants'
> Papa John's stores in the State of Virginia between the date three years prior to the
> filing of the original complaint and the date of final judgment in this matter (the
> "Virginia Wage Payment Class").

143.    Plaintiff brings the Fifth Count under Federal Rule of Civil Procedure 23, on behalf

of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants'
> Papa John's stores in the State of Virginia between the date three years prior to the
> filing of the original complaint and the date of final judgment in this matter (the
> "Virginia Unjust Enrichment Class") (together with the Virginia Minimum Wage
> Class and Virginia Wage Payment Class as the "Rule 23 Classes")

144.    Excluded from the Rule 23 Classes are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and otherwise

proper requests for exclusion from the Rule 23 Classes.

145.    The number and identity of the Rule 23 Classes are ascertainable from Defendants'

records.

146.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

147.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

148.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

149.    Notice can be provided by means permissible under Rule 23.

150.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

151.    There are more than 50 Rule 23 Class Members in the Virginia Minimum Wage Class, Virginia Wage Payment Class, and Virginia Unjust Enrichment Class.

152.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

153.    Plaintiff and the members in the Rule 23 Classes are subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, failing to pay all wages due, and taking unlawful deductions from the delivery drivers' wages. Defendants have also been unjustly enriched by all members of the Unjust Enrichment Rule 23 Class in the same way.

154.    Plaintiff and the members in the Rule 23 Classes sustain similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

155.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Classes and has no interests antagonistic to the members in the Rule 23 Classes.

156.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

157.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

158.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

159.    Common questions of law and fact exist as to the Virginia Minimum Wage Class that predominate over any questions only affecting Plaintiff and the Virginia Minimum Wage Class members individually and include, but are not limited to:

    a.  Whether Plaintiff and the Virginia Minimum Wage Class members are subject to a common expense reimbursement policy that result in wages to drop below legally allowable minimum wage;

    b.  Whether Plaintiff and the Virginia Minimum Wage Class are subject to a policy that require them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.  Whether Plaintiff and the Virginia Minimum Wage Class incur expenses that benefit Defendants;

    d.   Whether Defendants reimburse Plaintiff and the Virginia Minimum Wage Class members for their actual expenses;

    e.   Whether Defendants reimburse Plaintiff and the Virginia Minimum Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f.   Whether Defendants reimburse Plaintiff and the Virginia Minimum Wage Class members based on a reasonable approximation of the expenses they incurred;

    g.   Whether Defendants properly reimburse Plaintiff and the Virginia Minimum Wage Class members;

    h.   Whether Plaintiff and the Virginia Minimum Wage Class are actually paid the wage rate they were promised by Defendants;

    i.   The nature and extent of class-wide injury and the measure of damages for those injuries.

160.    Common questions of law and fact exist as to the Virginia Wage Payment Class that predominate over any questions only affecting Plaintiff and the Virginia Wage Class members individually and include, but are not limited to:

    a.   Whether Defendants withheld any amounts for the wages paid to Plaintiff and the Virginia Wage Payment Class.

    b.   Whether Defendants' withholding of any amounts for the wages paid to Plaintiff and the Virginia Wage Payment Class was willful or with intent to defraud;

    c.   Whether Plaintiff and the Virginia Wage Payment Class members are subject to a common policy that requires them to authorize Defendants to withhold wages;

    d.   Whether Defendants required Plaintiff and the Virginia Wage Payment Class to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment;

    j.   Whether Defendants took unlawful deductions from or improperly withheld the wages of Plaintiff and the Virginia Minimum Wage Class;

k.  Whether Defendants timely paid Plaintiff and the Virginia Minimum Wage Class all the wages they were due in a timely manner;

e.  The nature and extent of class-wide injury and the measure of damages for those injuries.

161.  Common questions of law and fact exist as to the Virginia Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Virginia Unjust Enrichment Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Virginia Unjust Enrichment Class members are subject to a common policy that requires them to provide cars to complete deliveries for Defendants;

b.  Whether Plaintiff and the Virginia Unjust Enrichment Class members are subject to a common automobile expense reimbursement policy;

c.  Whether Plaintiff and the Virginia Unjust Enrichment Class incurs expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants avoid business expenses they would otherwise be required to cover but for Plaintiff and the Virginia Unjust Enrichment Class providing cars to make deliveries;

e.  How much it would cost Defendants to operate their business but for Plaintiff and the Virginia Unjust Enrichment Class providing cars to make deliveries;

f.  Whether Plaintiff and the Virginia Unjust Enrichment Class confer a benefit on Defendants that Defendants are aware of;

g.  Whether Defendants accept the benefits conferred on them by Plaintiff and the Virginia Unjust Enrichment Class;

h.  Whether it would be unjust for Defendants to retain the benefit conferred on them by Plaintiff and the Virginia Unjust Enrichment Class without compensating for it;

i.  The nature and extent of class-wide injury and the measure of damages for those injuries.

162.     In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages – Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

163.     Plaintiff Paris restates and incorporates the foregoing allegations as if fully rewritten herein.

164.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked while on the road making deliveries.

165.     Defendants pay Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked on the road making deliveries.

166.     Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile-related expenses and have failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

167.     Defendants fail to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective are paid a wage rate lower than Defendants informed them that they would be paid.

168.     Plaintiff and the FLSA Collective's un- or under-reimbursed automobile-related expenses result in a deduction from the wages Defendants have paid them such that they are paid less than minimum wage in some or all workweeks.

169.     By the acts and conduct described above, Defendants willfully violated the

provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

170.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

171.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages – Virginia Minimum Wage Act ("VMWA")**
**Va. Code Ann. § 40.1-28**
**(On Behalf of Plaintiff and the Virginia Minimum Wage Class)**

172.    Plaintiff Paris restates and incorporates the foregoing allegations as if fully rewritten herein.

173.    Each Defendant has at all relevant times been an "employer" of Plaintiff and the Virginia Minimum Wage Class members within the meaning of the Virginia minimum wage law. Va. Code Ann. § 40.1-28.9.

174.    Defendants were required to pay Plaintiff and the Virginia Minimum Wage Class minimum wage for all hours worked.

175.    Defendants fail to pay Plaintiff and the Virginia Minimum Wage Class members all minimum wages owed.

176.    Defendants fail to actually pay Plaintiff and the Virginia Minimum Wage Class members minimum wage after accounting for deductions from their wages in the form of unreimbursed vehicle expenses.

177.    Defendants take unauthorized deductions from the wages of Plaintiff and the delivery drivers.

178.    Defendants' conduct and practices, as described herein, are willful and intentional.

179.    Defendants' conduct and practices, as described herein, constitute a continuing course of conduct.

180.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff, and the Virginia Minimum Wage Class members, for unpaid wages, interest at 8% of unpaid wages, costs, and reasonable attorneys' fees.

**Count 3**
**Failure to Timely Pay Wages – Virginia Wage Payment Act ("VWPA")**
**Va. Code Ann. § 40.1-29**
**(On Behalf of Plaintiff and the Virginia Wage Payment Class)**

181.    Plaintiff Paris restates and incorporates the foregoing allegations as if fully rewritten herein.

182.    Each Defendant has at all relevant times been an "employer" of Plaintiff and the Virginia Wage Payment Class members within the meaning of the VWPA. Va. Code Ann. § 40.1-2.

183.    Because they required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed to timely pay wages to Plaintiff and the Virginia Wage Payment Class.

184.    By not paying Plaintiff and the Rule 23 Class proper wages at least once every two weeks or twice in each month for time worked, Defendants have violated the VWPA. Va. Code Ann. § 40.1-29(A).

185.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, damages in the

amount of triple the amount of unpaid wages, 8% interest accruing from the date wages were due, costs, and attorneys' fees.

**Count 4**
**Unlawful Withholding of Wages – Virginia Wage Payment Act ("VWPA")**
**Va. Code Ann. § 40.1-29**
**(On Behalf of Plaintiff and the Virginia Wage Payment Class)**

186.    Plaintiff Paris restates and incorporates the foregoing allegations as if fully rewritten herein.

187.    Each Defendant has at all relevant times been an "employer" of Plaintiff and the Virginia Wage Payment Class members within the meaning of the VWPA. Va. Code Ann. § 40.1-29.2.

188.    Because they required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants unlawfully withheld wages earned by Plaintiff and the Virginia Wage Payment Class.

189.    By withholding reimbursement for Plaintiff and the Rule 23 Class's work-related vehicle expenses, Defendants have violated the VWPA. Va. Code Ann. § 40.1-29(C).

190.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, damages in the amount of triple the amount of unpaid wages, 8% interest accruing from the date wages were due, costs, and attorneys' fees.

**Count 5**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Virginia Unjust Enrichment Class)**

191.    Plaintiff Paris restates and incorporates the foregoing allegations as if fully rewritten herein.

192.    The Virginia Rule 23 Unjust Enrichment Class members at the Defendants'
Virginia Domino's stores have conferred a benefit on Defendants by using their own cars and
related equipment to perform work for Defendants.

193.    Defendants are aware of and have accepted the benefit conferred on them by Rule
23 Unjust Enrichment Class members.

194.    It would be unjust for Defendants to be permitted to retain the benefit conferred on
them by the Rule 23 Unjust Enrichment Class members without commensurate compensation.

195.    Plaintiff Paris and the Rule 23 Unjust Enrichment Class members are entitled to
equitable restitution of the benefits they have conferred on Defendants within the 3 years
preceding the filing of this complaint.

**WHEREFORE**, Plaintiff Paris prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action
members and prompt issuance of notice to all similarly-situated members of an opt-in class,
apprising them of this action, permitting them to assert timely wage and hour claims in this action,
and appointment of Plaintiff and her counsel to represent the collective action members.

B.    Unpaid minimum wages and an additional and equal amount as liquidated
damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules
of Civil Procedure.

D.    Designation of Plaintiff Paris as representative of the Rule 23 Classes and counsel of
record as Class Counsel for the Classes.

E.    Unpaid minimum wages, untimely paid wages, and unlawfully withheld and/or

deducted wages for Plaintiff and the Virginia Minimum Wage Class and Virginia Wage Payment Class.

F.       Liquidated damages under the FLSA.

G.       Damages in the amount of triple unpaid wages under the VWPA.

H.       Interest at 8% of unpaid wages.

I.       An award of restitution for the benefits conferred on and unjustly retained by Defendants to the Rule 23 Unjust Enrichment Classes.

J.       An award of prejudgment and post-judgment interest.

K.       An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.       Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

/s/ Brittany Haddox
Brittany Haddox (VSB No. 86416)
Monica Mroz (VSB No. 65766)
Strelka Employment Law
4227 Colonial Ave.
Roanoke, VA 24018
540-283-0802 (Phone)
*brittany@strelkalaw.com*
*monica@strelkalaw.com*

Andrew Biller (0081452), *pro hac vice pending*
Andrew Kimble (0093172), *pro hac vice pending*
Biller & Kimbler LLC
8044 Montgomery Rd, Suite 515
Cincinnati, OH 45236
513-202-0710 (Phone)
*abiller@billerkimble.com*
*akimble@billerkimble.com*

*Counsel for Plaintiff and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

/s/ Brittany Haddox
Brittany Haddox